IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLAUDIA KING<br>6643 Limekiln Pike<br>Philadelphia, PA 19138<br><br>　　　　　　　　　Plaintiff,<br><br>US AIRWAYS, INC<br>4000 East Sky Harbor Blvd.<br>Phoenix, AZ 85034<br><br>　　　　　　　　　Defendant. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT – CIVIL ACTION

Plaintiff, Claudia King ("Plaintiff"), by and through her undersigned attorney, for her Complaint against US Airways, Inc. ("Defendant"), alleges as follows:

1. Plaintiff initiates this action to redress violations by Defendant of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). Plaintiff alleges that Defendant violated the ADA by failing to engage in the interactive process of determining a reasonable accommodation for Plaintiff's disability, and by discharging Plaintiff because of her disability in violation of the ADA.

## PARTIES

2. Plaintiff Claudia King is an adult American citizen residing at 6643 Limekiln Pike, Philadelphia, PA 19138.

3. Defendant US Airways, Inc. is a for-profit corporation organized and existing under the laws of the State of Delaware that conducts operations in several states, including the Commonwealth of Pennsylvania, where it is registered and authorized to conduct business at 8000 Essington Avenue, Philadelphia, PA 19153.

## JURISDICTION AND VENUE

4. Paragraphs 1 through 3 are hereby incorporated by reference as though the same were fully set forth at length herein.

5. On or about December 30, 2014, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"), which was dually-filed with the Pennsylvania Human Relations Commission (the "PHRC"), thereby satisfying the requirements of 42 U.S.C. §§ 12117(a); 2000e-5(b) and (e). Plaintiff's EEOC Charge was docketed as Charge No. 530-2015-01223. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days after the unlawful employment practice.

6. By correspondence dated October 1, 2015, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

7. On or about November 16, 2015, within the relevant statutory timeline, Plaintiff filed the instant matter.

8. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

9. This action is authorized and instituted pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA").

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the plaintiff resides in this district and the events giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

12. Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13. On or around May 19, 2008, Plaintiff began working for Defendant as a Customer Service Representative at Defendant's location in the Philadelphia International Airport (the "Airport"). Plaintiff's job duties included assisting customers with Defendant's automated check-in kiosks, lifting baggage, and transporting customers with mobility impairments between locations within the Airport.

14. During the course of Plaintiff's employment with Defendant, Plaintiff performed her duties without incident, receiving positive feedback from management and no discipline.

15. Pursuant to a collective bargaining agreement with Plaintiff's union, Customer Service Representatives at the Airport are required to bid their shifts, work lines, and terminal locations several times each year to determine where in the Airport they will be stationed for any given period.

16. On or around April 28, 2014, Plaintiff was exposed to hazardous cleaning fumes while at work for Defendant and was required to visit the hospital. As a result of this incident, Plaintiff's treating physician placed her on a medical leave of absence from the date of the exposure until May 26, 2014 to help her recover from lingering symptoms, which included dizziness, headaches, and an acute stress reaction.

17. During her leave of absence, Plaintiff met with her doctor multiple times. During one of her appointments, Plaintiff was diagnosed with lower back pain, leg pain, and hypertension.

18. Plaintiff's lower back pain, leg pain, and hypertension constitute "physical impairments" under the ADA.

19. Plaintiff's conditions substantially limit Plaintiff in the major life activities of performing manual tasks, walking, standing, lifting, and bending.

20. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

21. Although Plaintiff is disabled within the meaning of the ADA, she was and is able to perform the essential functions of the Customer Service Representative position with reasonable accommodations.

22. As a result of Plaintiff's back pain, leg pain, and hypertension, Plaintiff's doctor required that her leave be extended. Plaintiff's doctor informed her on or around May 30, 2014 that she would be released to work restricted duty on or around July 16, 2014.

23. Plaintiff, in accordance with her doctor's recommendation, faxed a request for reasonable accommodation to Defendant before her return to work. This request included a description of her disability and the associated limitations, along with recommendations that she be allowed to work at gates without steep ramps, increase the amount of time she spent driving baggage carts, and limit the amount of time she spent walking, standing and lifting baggage.

24. In addition to faxing this request to Defendant, Plaintiff called Defendant's Human Resources Representative Naomi Postlewait ("Ms. Postlewait") several times to ensure her request's receipt, but was unable to get in touch with Ms. Postlewait, even after several attempts.

25. After several calls to Defendant with no response, Plaintiff finally received a call back from Ms. Postlewait, wherein she was informed that Defendant had not received her paperwork.

26. Plaintiff then instructed her doctor to re-fax her paperwork to Defendant, a request with which her doctor complied.

27. On or about July 16, 2014, Plaintiff received a call from Bernadette (last name unknown) ("Bernadette LNU"), an employee in Administration, who informed Plaintiff that the aforementioned paperwork still had not been received. Plaintiff then explained the situation and was asked once again to send her paperwork to Defendant, this time directly to Bernadette LNU.

28. Despite sending Defendant three (3) requests for a reasonable accommodation, Plaintiff never received a response as to whether or not her requested accommodation had been granted. As such, Plaintiff assumed that her employment had been terminated and applied for unemployment compensation.

29. Shortly after applying for unemployment compensation, on or around August 8, 2014, Plaintiff received a phone call from Ms. Postlewait, who informed her that she could return to work. Plaintiff then returned to work on or around August 11, 2014.

30. Despite Defendant's knowledge that Plaintiff was not supposed to be standing for extended periods of time, Plaintiff was placed in a position at the Ticket Counter on her first few days back at work. This position requires employees to stand for several hours at a time unless they receive express permission to sit.

31. Plaintiff requested that Defendant accommodate her disability by allowing her to sit on a stool while she was working at the Ticket Counter, but Plaintiff never received a response to this request.

32. Between August 20, 2014 and October 3, 2014, Plaintiff was assigned to work at various locations throughout the Airport.

33. On or about October 3, 2014, Plaintiff was called into a meeting with her union representatives and two of her managers, Aaron Collins ("Mr. Collins") and Nicole Blanchard ("Ms. Blanchard"). Contrary to company policy, which, upon information and belief, states that a member of Human Resources must be in attendance during any meeting in which an employee's status is changed, there were no Human Resources representatives present.

34. At the start of this meeting, Plaintiff's union representatives and managers stepped outside of the meeting room and had a brief conversation without Plaintiff in attendance.

35. Approximately fifteen (15) minutes later, one of Plaintiff's union representatives, Terry McBride ("Mr. McBride"), reentered the room, at which point he stated "Claudia, that [conversation] was not about you."

36. Ms. Blanchard then informed Plaintiff that even though she was not officially being terminated, Defendant had determined that she was unable to perform her job as a result of her disabilities, and that she was thus being forced out on medical leave.

37. Ms. Blanchard also informed Plaintiff that because she had not placed a bid for the Ticket Counter position in which she had previously been placed during the most recent bidding session, it was Defendant's assertion that it was no longer under any duty to accommodate Plaintiff's disability.

38. Defendant made this assertion despite the fact that the Ticket Counter position in which Plaintiff had previously been placed did not comply with the work restrictions set forth by Plaintiff's doctor and despite the fact that her requests for a reasonable accommodation while working in that position had been ignored.

39. Mr. Collins informed Plaintiff at the conclusion of this discussion that she would be required to turn in her access badge, radio, and other equipment. Mr. Collins then escorted Ms. King off the premises.

40. Plaintiff has not been allowed back to work since the aforementioned meeting.

41. It is believed and therefore averred that Defendant effectively terminated Plaintiff because of her disability in violation of the ADA.

42. Defendant failed to provide Plaintiff with a reasonable accommodation for her disability and failed to engage in the interactive process to determine such reasonable accommodations. Possible accommodations included alternate positions into which Plaintiff could have been placed or minor accommodations that would have allowed Plaintiff to sit more frequently while performing her job duties.

43. Plaintiff has, because of Defendant's wrongful termination of Plaintiff's employment, struggled to obtain other employment and has been and will be forced to expend significant amounts of money on health insurance premium payments.

44. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, earnings and earnings potential, loss of potential bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

**COUNT I**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101, et seq.**
**<u>DISCRIMINATION</u>**

45. Paragraphs 1 through 44 are hereby incorporated by reference as though the same were fully set forth at length herein.

46. At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

47. At all times relevant hereto, Defendant has had at least fifteen (15) employees within the meaning of the ADA.

48. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

49. As described above, Plaintiff's condition is a physical impairment that substantially limits Plaintiff in one or more major life activities.

50. Defendant was aware of Plaintiff's disability.

51. Upon information and belief, Plaintiff's job responsibilities have since been assigned to a non-disabled individual.

52. By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by terminating Plaintiff because of her disability.

53. Defendant also failed to engage in the interactive process with Plaintiff despite Plaintiff's requests for reasonable accommodations.

54. As a result of Defendant's deliberate, unlawful and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, earnings potential, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress and humiliation.

WHEREFORE, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000);

B.  Monetary compensation for the amounts expended by Plaintiff on health insurance premiums;

C.  Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

D.  Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

E.  Pre-judgment interest in an appropriate amount; and

F.  Such other and further relief as is just and equitable under the circumstances;

G.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

MURPHY LAW GROUP, LLC

By: _____
Michael Murphy, Esquire
Michael Groh, Esquire
Erica Kane, Esquire
Eight Penn Center, Suite 1803
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
215.375.0961 or 267.273.1054
murphy@phillyemploymentlawyer.com
Attorneys for Plaintiff

Dated: November 16, 2015